Page number 2058.1. Danny Jones v. Thomas Vilsack. Oral argument not to exceed 15 minutes per side. Ms. Holland, you may proceed for the appellant. Good morning. Good morning. May it please the court. My name is Maureen Holland. I, along with Yvette Kirk, represent the appellant Danny Jones. I would like to reserve two minutes for rebuttal, please. Very well. Thank you so much. This case asks the court to make essentially three legal decisions. One, on a case of retaliatory harassment, as the Burlington Northern Standard there was a recent decision from another panel where there is a current pending motion for an but there has been no published opinion as of that I'm aware of as of today. The second legal argument is under the Rehabilitation Act is justice delayed, justice denied, in that a delay in granting accommodations for, regarding a federal employee, would that amount to a violation of the Rehabilitation Act. The third legal decision is whether or not the trial judge who relied upon the magistrate judge in the report and recommendation misapplied the law as it relates to Anderson versus Liberty Lobby rather than applying a summary judgment standard which required an analysis of whether the evidence looking at it in light most favorable to in this case Mr. Jones was so one-sided that no juror could rule in favor of Mr. Jones. Instead, we submit that the court applied a balancing test, a balance, and said essentially in the balance any reasonable juror wouldn't rule in favor of Mr. Jones and we believe that is an inappropriate standard. Nonetheless, as this court has a de novo review standard, then we would submit that the evidence in the record and as we have argued throughout the summary judgment below and the standard under either a strict retaliation analysis, under a retaliatory harassment analysis, and under a failure to accommodate analysis. Looking at the facts in the light most favorable to the plaintiff, Mr. Jones filed a number of EEO matters. As this court is aware, if you're a federal employee, unlike if you work in the private sector, you are required to file, to essentially call and file with the EEO. Office your complaint of discrimination and or retaliation within 45 days. It's not like the private sector where you can wait out most of the 300 days, collect everything that has happened, and file a charge with the EEOC. If you're in the federal sector, you have to continually, for each event that happens, reach out again to the EEO and file. Counsel, good morning. I'm just trying to make the most sense of your arguments and how they kind of tie to the facts of the case. There were a number of complaints filed. There were a number of things your client complained about. Do you want to focus in on one or two that you think were critical? Either you recognize some legal doctrines at the beginning, how they tie to those claims, or there's just a lot going on in this case. Do you want to point to specific issues you really think we should focus on, or which of the actions by the government you say are most offensive? Just zero in a little bit for us. Yes, sir. Initially, there was an ongoing litigation in the Middle District of Tennessee in 2004, 2005. In 2005, you had this allegation against Mr. Jones by a co-worker that's looked into and found to be uncooperative, and there's no discipline. Mr. Jones himself files, within that 45 days, an EEO charge. He's investigated, and he's reassigned to Nashville. The second investigation begins because the management employees who were named and deposed in the litigation in the Middle District of Tennessee decide themselves that they are going to ignore the first investigation, ignore that that was that Danny Jones was essentially exonerated. They're going to instead direct that there must be a brand new investigation. They're going to decide that he must be moved 45 minutes from his current workstation, and the individuals making these decisions are the very named individuals in the prior litigation. Doesn't Pittman make a complaint? Isn't there an intervening act of Pittman making another complaint herself about working with Jones, and that arguably some of these actions were taken in response to that complaint? She files the complaint months, so more than six months after the original events that were she already complained about. So under the law, she filed her complaint that was looked into. She then files a second complaint on the exact same facts two days after being served with additional litigation because Mr. Jones fought a lawsuit naming her. She's not the government. I mean, she's not the official. She's not the officials you're complaining about. She's another employee. The government then investigates that and temporarily reassigns your client in light of her complaints. Well, they didn't have to because it had already been investigated. Her second identical complaint to the first complaint had already been investigated. If they didn't investigate her complaint, wouldn't they be subject to a complaint, a claim by her that they ignored her complaint against him? They already did investigate. It's a second identical investigation with a different outcome. So management, the individuals who are involved in the litigation, who are involved in prior EEO, they, knowing about his EEO, they are the ones who decide we're going to do, we're going to do a redo. She has no rights at that time to file another EEO. She's beyond her days. She files her EEO because she got sued in a lawsuit and says so. I got sued and therefore I now want to file an EEO that you've already investigated and I want you to take action and I want you to move him. And they do. The management who are involved in the earlier litigation, they do. Mr. Jones files an EEO regarding that. They move him. They tell him it's temporary. It's not. They essentially remove his duties. They tell him, well, the reason we have to remove your duties is because of the needs of the office. But the reason they moved him isn't because of the needs of the office. They moved him because she specifically, that is the co-worker, specifically requested that he be moved. This is because she got sued by Mr. Jones. Not because something new happened. Nothing new happened. She gets sued. She's mad. She reports to the very individuals who are the decision makers, who are aware of his EEO filing, who are part of his litigation. They're the ones that escalate it. They then use the same rationale every time for why he is now permanently assigned in Nashville. He has to drive the 45 minutes. He can't have the headphones. He can't have a window. He can't have any of the things that he had previously. And ultimately, he can't have his job title anymore. He continues to file EEOs regarding all of these events. Everyone is aware of it. So there's one part about the case. So he's moved from being a soil conservationist in Murfreesboro, maybe, if I remember correctly, to that position in Nashville? Yes. And there's no change in pay, right? No change in benefits. And it's the same title. So what, I mean, you're more in the weeds on this. What are the, bad pun, I guess. But what's the injury that your client alleges by that permanent reassignment? He no longer has to do his job. His title has changed. His title seems the same to me on paper. Initially, but then he's moved. Initially, he's told you can't have your title anymore. You can't have your job anymore because you don't meet criteria. He has a different job with the same seemingly in the same agency doing roughly the same things. Not doing the same things. He's now working for his coworkers. So instead of doing their job, he's working essentially for them, essentially doing what they tell him. So he's demoted in reality. Maybe not by title, but by what he does. Not by title or pay. Not entitled by pay, but the Burlington Northern retaliatory harassment and the retaliation standard doesn't require that, unlike a discrimination case where that would be a factor that you're looking at. The question under Burlington Northern is, would this sort of behavior, are transferring somebody, changing their job duties, making them drive, not accommodating them, moving them away, and then ultimately giving his job title to the woman who complained about him, is that the kind of behavior by the agency that would amount to a deterrence? And we submit that it does in this instance. And it's not just that he got moved to Nashville and was doing the same thing. Oh, he had the same job. He was doing the same thing. That's incorrect. They get rid of his duties. They change his job. And you can't have this job anymore because you don't meet criteria. That's pretty significant when you've been working for more than 20 years in an agency, doing your job, doing it well, and then ultimately moved away from your home base and instead the person who complained against you for filing all the complaints or does it have to do with the co-worker? The retaliation is in connection with him having filed complaints. He states in one of his EEO filings that the reason he hadn't filed is because his co-worker falsely accused him of inappropriate conduct. So it does involve the facts that happened at that time, but his complaints were against his management throughout. His complaints were not in terms of his EEO filings. They were about the way in which he was treated by management differently from others. Ms. Holland, am I correct that the Department of Agriculture has a policy, a sexual harassment policy, that when a complaint is filed that the employees would be separated? And is it your position that they should have transferred Lori Patterson after she made the complaint of sexual harassment rather than your client? Is that your position? No. The original investigation was that both individuals under the policy were put on administrative leave. So the agency follows their policy. They put both individuals on administrative leave. They do a full investigation because exactly as you say, if there's a problem and someone needs to be removed, then the policy requires that. The decision by the agency was there was no violation. So no one needs to be moved because essentially it didn't happen. Not in that way. And so that's why they said there's no issue. These two can work together and they do for a period of months, months before this is all now, there's a redo, a request for a redo at the behest of management who are involved in these EEO filings by Mr. Johnson. Okay. Thank you. Any further questions? Judge White? Judge Raebler? All right. You'll have your two minutes for rebuttal. Yes. Thank you so much. Let's hear from the attorney for the FLE. Thank you, Your Honor. If it pleases the court, I'm Michael Roden from the United States Attorney's Office, Middle District of Tennessee. On behalf of the FLE, the Secretary of Agriculture. As the court is aware, Mr. Jones filed a series of EEO complaints over a period of three years, well over a decade ago. And as your court has heard, Mr. Jones's disputes with his employer, the Natural Resource Conservation Service, or NRCS, all stem from an incident that occurred in September 2005 when he was at the NRC office in Murfreesboro. His job title for well over 10 years has been a soil conservationist with the particular assignment at this time of Geographical Information Specialist, or GIS. As the court has heard, an allegation of serious workplace misconduct was made against him by his co-worker, Lori Pittman. The court does not need to get into the details of that incident, as an independent outside investigation found that Ms. Pittman's allegations were credible. Now, in the reply brief and just now in her argument, Mr. Jones's attorney made this incorrect statement that needs to be corrected. The first investigation, which was done in-house, had a finding of inconclusive. It did not clear Mr. Jones, as his attorney states. The second investigation, which was requested by the Washington, D.C., civil rights office of NRCS, they're the ones that said let's do a second investigation in light of Ms. Pittman's EEO complaint. Counsel, am I right that she didn't file an EEO complaint previously? She did not file an EEO complaint when it happened. She reported it, the incident, in September 2005. There was an in-house investigation that was done, and it was found inconclusive. He said, she said, basically. The quote-unquote second investigation was in response to her first EEO filing. In other words, your friend on the other side says, this is like the same thing all over again, but I thought one distinguishing factor was that this was an actual formal EEO complaint the second time. Yes, your honor, and the ironic, or whatever term you want to use, tragedy of this case, is that if Mr. Jones had just left everything alone, nothing would, they'd both probably still be working in Murphy's role now. But after the first investigation was deemed inconclusive, nothing further has happened. We can make the argument maybe something more should have been done at that time, but it wasn't, and they basically said, y'all be on your best behavior, and then Mr. Jones sued Ms. Pittman in state court for defamation. That was, I'm sorry. Why was she permitted to revive it? The whole thing was, it was a discrete event, or alleged event, and the time had lapsed, so why was she permitted to raise it at that late date? I believe she was alleging in her EEO complaint for sexual harassment that Mr. Jones continuing to harass her, and by filing a lawsuit against her for defamation, was another discrete act, and that it related back to the September 2005 incident. Yes, I think if nothing had happened more between September 5, 05, and when she filed her EEO complaint, you're right, I think it would have been untimely, but her allegation at that time was, he continues to press this, he continues to harass me, he just sued me in state court, made me get an attorney, all this stuff, and that is further harassment, and it related back to the incident. When she did that, when she did that, I'm sorry. How can just filing a lawsuit be harassment? She wasn't alleging that he was saying things to her every day, or he filed a lawsuit, how can that be processed as a claim of harassment? Yes, your honor, and I understand that. I'm not here to defend Ms. Pittman's lawsuit, or her, she didn't have a lawsuit, her EEO complaint. The fact is, that's what the agency was faced with. The agency was now faced with an escalating situation. Regardless of whether her EEO complaint had merit or not, it was there. It was now being, it was they now had two employees who were escalating their feud, if you will, between each other. That's when the NRCS office, they're in Murfreesboro, and the state office as well, reached out to the Civil Rights Office of NRCS in Washington and said, what do we do about this? And they're the ones, the DC office, who said, let's do the second investigation. Her EEO complaint was going to have to be investigated anyway, as the court has noted. So this was just in furtherance of that. And it was that second investigation, independent, done by an outside investigator, that was, that found Ms. Pittman's allegations to be credible. That's the landscape that the agency was faced with. Regardless of what Mr. Jones may continue to feel about this matter 16 years later, the fact is, this is what the agency was faced with. A independent investigation, which found Ms. Pittman's allegations to be credible, and you got two employees that need to be separated, and as the court has noted, there's a policy in NRCS to separate employees under these circumstances. They moved Mr. Jones to the state office in Nashville, first on a temporary basis, pending the investigation. Counsel, if they had moved Ms. Pittman rather than Ms. Jones, would she have a complaint for retaliation by them moving her after she files a complaint of sexual harassment? Absolutely. Okay, so they're in a catch-22 situation. Exactly, Your Honor. They're required under their policy to separate them, and who is going to be separated? Exactly, exactly. It was basically, who do we want to sue us? I mean, they were going to get a lawsuit either way, it looked like. So, there had been nothing to indicate that Ms. Pittman had done anything wrong. She was found to be credible by the second investigation, and I think there was also a look as to which one could be moved with the least disruption of operations. Mr. Jones was moved on a temporary basis, pending the investigation. And then subsequently, after the investigation was done and Ms. Pittman was found credible, they made the transfer permanent. Can I ask you about the transfer? In many respects, it looks awfully similar. Same title, same pay, no change in benefits or anything. But your friend on the other side says that the duties changed, that Jones is now working for different people, and I don't know if he had a longer commute, but can you respond to that? Yes, I think the commute is definitely something that happened immediately. There is about, I don't know, 30 minutes to 45 minutes, depending on traffic, between Murfreesboro and Nashville. Mr. Jones is hardly the only employee of the federal government who travels that far. But yes, that is true. As far as the changing of the duties and so on, that came later with the reorganization, which we can get into now, or I can get back to. But yes, at one point, he was, around the 2008 time frame, he was, there was a reorganization of the NRCS state office, and as part of the reorganization, he was moved from the GIS staff to another staff, the Ecological Sciences staff, I believe. And again, still as a Soil Conservationist, he's never been moved away from his job title of Soil Conservationist that he's held for 10-15 years. But he is working now for a different staff, and that did not occur immediately with the transfer to Nashville, but it did occur a couple years later. Is he working for his old, is he working for people who used to work for him? I have to say, I've had this case since 2005, and actually I was on Mr. Jones's earlier lawsuit that I want to mention. I don't recall ever hearing that before, and I'm not saying it's not correct, I just have never heard that before. I don't recall it being in the record that he was working for people, he was never working for people who used to work for him. I don't recall that in the record. And he's still employed, right? He's still employed. At some point, since he's been transferred to Nashville, he has received a promotion from GIS 9 to GIS 11, about an 18% increase in pay. Mr. Jones's first argument in his brief is that the NRC has put Ms. Pittman up to file her EEO complaint of sexual harassment. This one is easy to resolve because there's no evidence whatsoever of that. Ms. Pittman did not interrupt in any way anybody put her up to that, and there's no contrary sworn statement to put that in contention. As I said, the transfer was separate, two employees who obviously can't work together, and that has been found repeatedly not to be an adverse action. Now, once he's in Nashville, he does ask for some accommodations for his conditions of anxiety, depression, paranoia, and there was a bit of a delay in finally reaching that, but we would submit it's not because of anything the agency did. Mr. Jones didn't follow the right procedure at first. He mentioned this casually to the state director, who apparently believed that it was already something that was in the works, so he did not do anything about it. Mr. Jones did not follow up on it apparently until about January of 2007 when the state administrative officer first learned of it, contacted Mr. Jones's immediate supervisor, who was also unaware of the request for accommodation. The supervisor met with Mr. Jones, and Mr. Jones gave the supervisor a doctor's note. It was deemed not to be good enough. They needed more information. They asked Mr. Jones to provide more information, and it took him another six months to provide follow-up information. Once that was done, things started moving. He was found to be disabled under his conditions. He was given the accommodation of working from home two days a week. Some computer equipment that would facilitate that was ordered on a rush basis, but Mr. Jones still filed an EEO saying we delayed his request. Respectfully, we did not delay. First, Mr. Jones didn't follow the right process, and then secondly, when he finally did and got his request for accommodation and doctor's note to the right people, things started happening. It took him a while to get more documents, but that was either a delay on his part or his doctor's part. It was not on the agency's part. The agency acted appropriately. Now, as I said, once the investigation was finished and Ms. Pitman was deemed credible, the assignment to Nashville was made permanent. As I said, Mr. Jones and Ms. Pitman can't work together. That should not be even an issue here. Secondly, he's needed in Nashville now. The GIS server is in Nashville now, and that was his primary job duty. He needed to be there with it. In the magistrate's opinion adopted by the court, they found a prima facie case, but found that we had articulated non-discriminatory reasons for which Mr. Jones has not shown pretext. We would respectfully submit that even under the Burlington Northern Standard, which we agree does apply to retaliation claims, this is not even a prima facie case because there's no adverse action here. The district court correctly found there was no nexus to protected activity. If there's any timing nexus at all, it's to the investigation. The second investigation was not complete, and he had been temporary transferred pending the investigation. Now that it's complete, it made sense to make the transfer permanent. As the court kind of indicated, you have to ask what does Mr. Jones want? Did he want to go back and work with this co-worker who had credibly, according to the investigation, accused him of inappropriate conduct? That was not going to happen. The USDA had extremely legitimate non-discriminatory reasons for transferring Mr. Jones, and he has done nothing to cast any doubt on that. A few months later, Mr. Jones is informed by his supervisor that he'll need to move his cubicle because the engineering section where he was sitting needed that cubicle back, and he needed to go there and work with the GIS section, which apparently was in another part of the office. He said he needed a window cubicle because of his conditions. I don't think he ever submitted any medical documentation for that, but nonetheless, the agency proposed some options. After about five months, a window cubicle became available, and he got that. He wanted noise-canceling headphones, which would cut him off from the rest of the office. They negotiated with him on that. They said, how about we get you a new telephone set? The record is not clear whether that was ever resolved, but it is part of one of the CEOs. Mr. Jones has the burden of showing that his requested accommodation was reasonable, and respectfully, he has not met that burden. The agency participated in the process in good faith, and employers are not required to provide the precise accommodation that the employee wants, as long as what the agency is offering is reasonable. The USDA acted reasonably here. He got his window cubicle. He's never shown how his request for Bose headphones, expensive ones, by the way, that would cut him off from the rest of the office, were either medically necessary or reasonable. Finally, as to the reorganization, there was a reorganization at the state NRCS level. This was one of the results that he would need to move from the GIS staff, still as a soil conservationist, at no loss of pay or benefits, to the ecological sciences staff. Sure, there probably was some change of duties, but he has made no showing, other than his perception, that these were less prominent duties. He was informed that he was being reassigned because he didn't have a BS in geography, which... Mr. Rode, you're out of time, but I'll give you 30 seconds to a minute to just want to say that the events that Mr. Jones has identified spread out over three years do not, as a matter of law, describe an objectively hostile or abusive work environment or a pattern of retaliation. Rather, they reflect an agency doing its best to utilize an employee, an employee who, by the way, has been credibly accused of serious misconduct, to use that employee in a manner best fitting his abilities and the needs of the agency. Thank you, Your Honor. Thank you. Any further questions for Mr. Rode, Judge White? All right, Ms. Holland, you have two minutes to rebuttal. Thank you. As one of your honors pointed out, litigation is not harassment and should not have formed the basis and allowed management to do a second investigation on Mr. Jones. Our brief does reference Mr. Jones reporting to co-workers. That's on page 18. It also has a reference to the record, contrary to Mr. Rode's comments. There is sufficient evidence of failure and delay in accommodation. There was medical documentation provided in 2006 that was disregarded. Mr. Jones was not accommodated until more than seven months into 2007. The 2007 documentation that's in the record is quite complete and explains Mr. Jones' anxiety and his need for quietness, which the agency then later says it knows nothing about. The agency had the medical documentation. They disregarded the medical documentation. They decided they needed more medical documentation, despite that it was sufficient. Those references are in our brief and in the record. Mr. Jones has had this case. Obviously, he's been out here for a long time, and justice has been delayed extensively by the agency. The agency's actions have caused Mr. Jones to experience inequity, unfairness, violations of his rights. Mr. Jones, following his rights, should have been allowed the opportunity to work and continue his job in his home base. Thank you so much. Thank you, Ms. Allen. Any further questions? All right. Thank you, counsel, for your argument. The case will be submitted. You may call the next case.